UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DAVID G. BRUCE,<br><br>Defendant. | No. 1:17-cr-00077-DAD-BAM<br><br>ORDER DENYING DEFENDANT'S MOTION FOR MODIFICATION OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)<br><br>(Doc. No. 134) |

Pending before the court is a motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), brought on behalf of defendant David G. Bruce. (Doc. No. 134.) That motion is based in part on the purported risks posed to defendant Bruce by the ongoing coronavirus ("COVID-19") pandemic. For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On August 15, 2019, just over a year ago, defendant was sentenced to a term of 78 months in the custody of the U.S. Bureau of Prisons ("BOP"), followed by a 36-month term of supervised release, after being convicted by a jury of conspiracy to introduce contraband into a prison in violation of 18 U.S.C. § 371, attempt to possess with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 846 and 841(a)(1), and bribery in violation of 18 U.S.C. § 201(b)(2)(C). (Doc. Nos. 72, 118, 119.) Defendant is currently incarcerated at Federal Correctional Institution,

La Tuna ("FCI La Tuna") in Anthony, Texas. (Doc. No. 134 at 3.) His projected release date is August 27, 2024. (*Id.*)

On April 17, 2020, defendant filed the pending motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 134.) On May 1, 2020, the government filed its opposition to the motion, and on May 4, 2020, defendant filed his reply thereto. (Doc. Nos. 137, 141.) On May 7, 2020, after receiving permission from the court, the government filed a supplemental brief in support of its opposition. (Doc. No. 142.)

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, __ F. Supp. 3d __, 2020 WL 1673440, at *2 (D. Or. April 6, 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

2

> U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary

/////

/////

---

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, LAW360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, LAW360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[3]; *see also United States v. Gonzalez*, No. 2:18-cr-00232-TOR, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c). *See, e.g.*, *United States v. Parker*, __ F. Supp. 3d __, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts to have done so have agreed that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a

---

[3] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

4

>district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id*. Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id*.

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4; *United States v. Trent*, Case No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

## I. Pending Appeal

On August 15, 2019, defendant filed a notice of appeal with the Ninth Circuit, appealing from his judgment of conviction and the undersigned's denial of his motion for a new trial. (Doc. No. 121.) That appeal remains pending before the Ninth Circuit. The government contends that the pending appeal strips this court of jurisdiction over the pending motion for compassionate release because "[t]he filing of a notice of appeal 'confers jurisdiction on the court of appeals and divests the district court of its control *over those aspects of the case involved in the appeal*.'" (Doc. No. 137 at 13) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)) (emphasis added). The court is not persuaded by the government's argument in this regard. As defendant correctly points out in his reply, his appeal pertains to "the merits of his conviction and the trial court's denial of his motion for new trial. Bruce did not appeal the sentence administered." (Doc. No. 141 at 2.) Thus, the pending motion—which seeks release from confinement due to the current global pandemic and the health risks posed to him as a result—does not involve aspects of defendant's case that are the subject of his pending appeal.

Accordingly, the court rejects the government's argument that defendant's filing of his notice of appeal divests this court of jurisdiction over the pending compassionate release motion.

## II. Administrative Exhaustion

The court next turns to whether defendant has complied with § 3582(c)(1)(A)'s administrative exhaustion provision prior to bringing the pending motion. Defendant contends

5

that he has requested compassionate release from BOP but has not heard back.  (Doc. No. 134 at 8.)  The government argues that "[t]here is no evidence that Bruce filed any compassionate release request with the BOP before filing his motion for emergency release in this Court."  (Doc. No. 137 at 11.)  In his reply, defendant points the court to his original and supplemental declarations and argues that he "requested relief under 18 U.S.C. § 3582—and he was informed this was not a remedy available to him."  (Doc. No. 141 at 4.)

       The court has reviewed both declarations and finds that neither establishes that defendant requested compassionate release under § 3582(c)(1)(A).  Instead, the declarations establish that defendant requested to serve the remainder of his sentence in *home confinement*.  (*See* Doc. No. 134-7 at 3) ("I have requested of FCI La Tuna that I be released to serve the remainder of my sentence on Strict *Home Compliance*.  FCI La Tuna denied my request.  The manager for FCI La Tuna did instruct me that I do not qualify for *home confinement*[.]") (emphasis added); (*see also* Doc. No. 136 at 1) (defendant declares that he meets each of the six factors outlined by the Attorney General in a March 26, 2020 memo to the Director of BOP for which inmates should be prioritized for *home confinement* in response to the current global pandemic); Office of Att'y Gen., *Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic* (March 26, 2020).  A request for home confinement, however, is distinct from a request for compassionate release, and an inmate "[b]eginning the process as to home confinement does not equate to [BOP] evaluating [] compassionate release requests" as contemplated by § 3582(c)(1)(A).  *United States v. Reid*, No. 17-cr-00175-CRB-1, 2020 WL 1904598, at *3 n.4

/////
/////
/////
/////
/////
/////
/////
/////

6

(N.D. Cal. Apr. 18, 2020); *see also United States v. Carlucci*, No. 10-cr-00464-01-KHV, 2020 WL 2527013, at *3 (D. Ariz. May 18, 2020).[4]

Defendant next argues that the court "need not and should not wait for" him to exhaust his administrative remedies because to do so "would be futile," and instead the court should waive the exhaustion requirement given the "speed and unpredictability of this pandemic." (Doc. No. 134 at 7–8, 11.) The government counters that a failure to exhaust administrative remedies cannot be waived or excused because "[t]he requirements imposed by 18 U.S.C. § 3582(c)(1) are mandatory." (Doc. No. 137 at 17.)

As the COVID-19 virus continues to spread, district courts across the country have been presented with the question of whether § 3582(c)(1)(A)'s administrative exhaustion provision for defendants seeking to bring compassionate release motions in federal court can be excused. Some court have found that it can be, *see, e.g. United States v. Connell*, __ F. Supp. 3d __, 2020 WL 2315858 (N.D. Cal. May 8, 2020), while others have held that the exhaustion requirement is jurisdictional and cannot be excused under any circumstances, *see, e.g.*, *United States v. Meron*, No. 2:18-cr-0209-KJM, 2020 WL 1873900 (E.D. Cal. Apr. 15, 2020). For the purposes of ruling on the pending motion, however, this court need not resolve this issue. As discussed below, the court finds that the pending motion fails to establish extraordinary and compelling reasons warranting defendant Bruce's release. Moreover, even if such extraordinary and compelling

---

[4] In the pending motion, defendant Bruce appears to be alternatively requesting that this court release him to home confinement. (*See* Doc. Nos. 134 at 1–2, 7, 9; 141 at 10.) The CARES Act, however, "'authorizes the BOP—not courts—to expand the use of home confinement' under 18 U.S.C. § 3624(c)(2)." *United States v. Fantz*, No. 5:14-cr-32-BR, 2020 WL 3492028, at *1 (E.D.N.C. June 26, 2020) (quoting *United States v. Nash*, No. 19-40022-01-DDC, 2020 WL 1974305, at *2 (D. Kan. Apr. 24, 2020) (collecting cases)); *see also United States v. Rice*, No. 12-cr-818-PJH, 2020 WL 3402274, at *4 (N.D. Cal. June 19, 2020) (denying a defendant's request for release to home confinement made in conjunction with his motion for compassionate release because "the court has no authority to designate the place of confinement" and the "Bureau of Prisons has the statutory authority to choose the locations where prisoners serve their sentence"); *United States v. Gray*, No. 4:12-cr-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (holding that the CARES Act "does not authorize the court to order defendant's placement in home confinement"). The district court may only impose home detention as a condition of supervised release, rather than as part of a sentence of imprisonment. *United States v. Connell*, __ F. Supp. 3d __, 2020 WL 2315858 at *5, n.6 & *7 (N.D. Cal. May 8, 2020).

reasons were established, the court further finds that the requested reduction in defendant's sentence would be inconsistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).

Accordingly, the court declines to address whether defendant may be relieved of the obligation to exhaust his administrative remedies under § 3582(c)(1)(A).

### III.     Extraordinary and Compelling Reasons

According to the Sentencing Commission's policy statement, "extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). Even though the catch-all of "other reasons" was included in the policy statement at a time when only the BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions for reductions in their sentence under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

The medical condition of a defendant may warrant the granting of compassionate release by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id*. In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from

8

which he or she is not expected to recover.

*Id*. at cmt. n.1(A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the risks posed by COVID-19 may tip the scale in favor of release when the particular circumstances of a case are considered in their totality. *See, e.g.*, *Parker*, 2020 WL 2572525, at *9–10 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); *United States v. Rodriguez*, No. 2:03-cr-00271-AB, 2020 WL 1627331 at *10–11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).

Here, defendant Bruce, who is thirty-five years old, argues that he "suffers from several health complications which make him an increased risk for COVID-19," including diabetes, high blood pressure, and the fact that he "falls under the family risk factors for heart disease." (Doc. No. 134 at 3, 9.) The government counters that defendant Bruce has not provided any evidence corroborating his assertion that he suffers from diabetes or pulmonary hypertension. (Doc. No. 142 at 2.) The court notes that defendant has not provided the court with documentation or supporting medical records, but rather has presented only his own declaration as well as his father's, both of which state that defendant Bruce does suffer from the aforementioned health conditions. (Doc. No. 134-7 at 3; *see also* Doc. No. 134-6.) In support of its opposition to the pending motion, the government filed under seal a copy of BOP's medical records pertaining to

defendant.  (*See* Doc. No. 140-1.)  The government argues these medical records do not clearly establish that defendant has either diabetes or high blood pressure.  (Doc. No. 142 at 3.)

As an initial matter, the Center for Disease Control ("CDC") advises that individuals with certain conditions, such as type 2 diabetes and serious heart conditions (including heart failure), are "at an increased risk of severe illness from COVID-19," and that individuals with other conditions, such as type 1 diabetes and hypertension or high blood pressure, "might be at an increased risk for severe illness from COVID-19."  *See People Who Are at Higher Risk for Severe Illness*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/ people-at-higher-risk.html (last reviewed August 31, 2020).  Here, the court has reviewed defendant Bruce's BOP medical records, and agrees with the government that these records do not demonstrate that defendant currently suffers from diabetes or hypertension.  Moreover, even if the court were to assume that defendant does suffer from these conditions, he does not contend that the medical staff at FCI La Tuna are unable to treat his underlying health conditions, or that they are unable to adequately manage the COVID-19 outbreak.  *See United States v. Ayon-Nunez*, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) ("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.").  In any event, defendant has not demonstrated that he is currently suffering from a serious medical condition "that substantially diminishes [his] ability [] to provide self-care . . . and from which he [] is not expected to recover."  *See* U.S.S.G. § 1B1.13, cmt. n.1(A)(ii); *see also United States v. Williams*, No. 2:13-cr-00383-TLN, 2020 WL 3402439, at *2 (E.D. Cal. June 19, 2020) ("The Court concludes Defendant is neither terminally ill nor subject to a serious or unrecoverable condition that substantially diminishes his ability to provide self-care within a BOP facility.").

Accordingly, the court concludes that defendant Bruce has not met his burden of demonstrating extraordinary and compelling reasons for compassionate release under

/////

/////

/////

§ 3582(c)(1)(A) and therefore his motion will be denied.[5]  *See Williams*, 2020 WL 3402439, at *3 ("[T]he Court declines to grant Defendant's request for compassionate release because Defendant has not met his burden to show there are extraordinary and compelling reasons for his release.").

### IV.  Consistency With the § 3553(a) Factors

Even if defendant Bruce's motion was supported by a showing of extraordinary and compelling reasons for his compassionate release, the undersigned is not persuaded that the requested reduction in sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).[6]  *See Parker*, 2020 WL 2572525, at *11.

In the pending motion, defendant does not explicitly address the § 3553 factors, although he argues that he "is a non-violent offender[,] . . . has no significant criminal history, and has lived the majority of his life as a law-abiding citizen." (Doc. No. 134 at 13–14.)  The government counters that the "drastic sentence reduction" that would result if the court were to grant the pending motion is not warranted in light of the § 3553(a) factors, particularly because defendant "committed a serious drug trafficking crime[] and abused his position of trust within the Bureau of Prisons." (Doc. No. 137 at 21.)  The government argues that defendant Bruce "knew all too well that his conduct was illegal, and violated his duty as a federal employee, making the

---

[5] In the pending motion, defendant Bruce also argues that his continued confinement at FCI La Tuna during the current global pandemic violates his Eighth Amendment rights.  (*See* Doc. No. 134 at 11–13.)  Defendant Bruce's arguments in this regard would more appropriately be asserted in a civil rights action brought pursuant to 42 U.S.C. § 1983.  These arguments, however, are not relevant to the statutory factors this court must consider in evaluating a motion for compassionate release brought under 18 U.S.C. § 3582(c)(1)(A), and therefore will not be addressed in this order.

[6] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider:  the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

11

institution he served a more dangerous place." (*Id.* at 21–22.)

As noted above, defendant is currently serving a 78-month sentence for conspiracy to introduce contraband into a prison in violation of 18 U.S.C. § 371, attempt to possess with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 846 and 841(a)(1), and bribery in violation of 18 U.S.C. § 201(b)(2)(C). (Doc. No. 119.) Defendant Bruce did not accept responsibility for his criminal conduct, as noted in the presentence report in his case. (Doc. No. 95 at 8.) Moreover, the presentence report concluded that defendant's testimony at his trial "was perjury and was refuted by the jury's guilty findings" and therefore added a two point upward adjustment in his offense level for obstruction of justice (*Id.* at 10.) Based on these findings, the presentence report determined that defendant Bruce's total offense level was 28, that his criminal history category was II, and his advisory sentencing guideline range therefore called for a term of imprisonment of between 87 and 108 months. (*Id.* at 4.) There were no objections to the presentence report by the parties and the court adopted those findings as true and correct. (Doc. No. 132 at 25–26.) After considering the § 3553(a) factors, the undersigned varied downward from the guideline range, based upon a slightly overstated criminal history category and the difficulty of imprisonment on a former BOP employee as well as other noted factors, and sentenced defendant Bruce to a 78-month term of imprisonment. (Doc. No. 119.)

The court concludes that granting the pending motion would not provide just punishment or afford adequate deterrence. Indeed, the criminal conduct underlying defendant Bruce's convictions was egregious: he abused his position at a federal correctional facility to introduce contraband to the prison population and profited from that scheme. Accordingly, the court does not find that granting compassionate release would be consistent with the § 3553(a) factors.

In addition, the court is not persuaded that defendant has established his post–offense rehabilitation since his sentencing just over a year ago. In fact, defendant presents no argument or evidence to support his claimed rehabilitation. *Cf. Parker*, 2020 WL 2572525, at *11 (granting a defendant compassionate release in part because he demonstrated rehabilitation during his imprisonment by earning two associate degrees, participating in other continuing education courses and working as an education instructor, "suicide companion," and career services clerk)

(collecting cases).  Moreover, even if defendant Bruce had demonstrated his full rehabilitation since sentencing, rehabilitation alone is not enough to warrant compassionate release.  *See* 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13, cmt. n.3.

## CONCLUSION

Because defendant Bruce has failed to demonstrate that "extraordinary and compelling" reasons exist justifying his release under 18 U.S.C. § 3582(c)(1)(A) or that his early release at this time would be consistent with consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), his motion for compassionate release (Doc. No. 134) is denied.

IT IS SO ORDERED.

Dated:  **September 2, 2020**                    /s/ Dale A. Drozd
                                                 UNITED STATES DISTRICT JUDGE